**UNITED STATES of America,
Plaintiff-Respondent,**

v.

**Thomas J. CARELLA, Daniel J. Domino
and Joseph C. Erhart, Defendants-
Appellants.**

**Nos. 271–273, Dockets 32670–32672.**

United States Court of Appeals
Second Circuit.

Argued Jan. 10, 1969.

Decided March 14, 1969.

James P. Shea, Buffalo, N. Y., for defendant-appellant Joseph C. Erhart.

Edward K. O'Shea, Buffalo, N. Y., for defendant-appellant Thomas J. Carella.

Harold J. Boreanaz, Buffalo, N. Y., for defendant-appellant Daniel J. Domino.

Edgar C. Ne Moyer, Asst. U. S. Atty. (Andrew F. Phelan, U. S. Atty., Buffalo, N. Y., Michael W. Blommer, Dept. of Justice, Washington, D. C., of counsel), for plaintiff-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

After a jury trial before Chief Judge Henderson in the District Court for the Western District of New York, appellants Domino, Carella and Erhart were convicted of conspiring to rob a Buffalo branch of the Marine Midland Trust Company of Western New York, a bank insured by the Federal Deposit Insurance Corporation, in violation of 18 U.S.C. §§ 371, 2113(a). At a previous trial the jury acquitted a codefendant and disagreed with respect to appellants.

■ Appellants complain of the court's handling of a question that arose the morning after the jury had been selected concerning reports in a Buffalo newspaper and on the radio that the jury at the first trial had deadlocked, with the vote 11–1 for conviction. The judge inquired of the jurors in a group whether they had been exposed to any press comment on the case. Several jurors replied that they had heard of an earlier trial ending in a hung jury, and one intimated that he knew still more. He was separated from the others for further questioning, and was excused after he revealed that he knew of the previous vote. After determining that no other jurors knew of the vote, the court denied a motion seeking a mistrial on the ground that appellants were prejudiced by the disclosure to the entire jury of the fact of the previous trial. While, by questioning the jurors separately, the judge might have avoided the danger of spreading to all the knowledge of any one, we perceive no prejudice to appellants in the jurors' awareness of the earlier deadlock but not of the vote. If this had any effect, which seems doubtful, it would have been in the direction of enhancing the tendency to entertain a reasonable doubt rather than of reducing it.

■ Appellants make a number of points with respect to the testimony of Pascal Calabrese, an accomplice who was the Government's chief witness in this case, as also in United States v. Caci, 401

F.2d 664 (2 Cir. 1968). To begin, there is the complaint, rather standard these days, that when the Government presented its case before the grand jury, it did not call Calabrese but had his testimony related by Police Officer Giambrone. But the prosecutor made it clear to the grand jury that Giambrone was not testifying of his own knowledge, and a threat to Calabrese's life justified the decision to keep him away from Buffalo in the security of the Federal Correctional Institute at La Tuna, Texas. A second point concerns the court's quashing a defense subpoena requiring the acting United States Attorney to produce a copy of a memorandum he had presented to the New York State Parole Board in support of an application by Calabrese for release from imprisonment on a New York sentence. The defense had properly been allowed to develop at considerable length the Government's efforts to secure an early parole for Calabrese, and the judge instructed the jury to take his hopes of reward into full account. Determination that this inquiry had gone far enough was within the discretion confided to the trial judge; moreover, examination of the memorandum confirms his conclusion that it did not contain anything not already known to the defense. A third objection relates to a question asked by the judge whether in various conversations with defendant Erhart there was any discussion in Calabrese's presence about any share of the proceeds of the planned robbery. Calabrese said they had discussed it, that "I give him 10% of every score," and that the same percentage had been agreed in this instance. The judge refused to strike the reference to previous crimes or to grant a mistrial because of it. The earlier arrangements were sufficiently related to the crime charged to be admissible under the rule of this circuit. It suffices to cite United States v. Deaton, 381 F.2d 114, 117–118 (2 Cir. 1967), where the authorities are reviewed.

A more troublesome point is Domino's contention that he was prejudiced by the refusal to sever his trial from Carella's. The chief role allegedly played by Carella in the conspiracy was to provide, from the garage in which he worked, a key to a car to be used in the robbery; this was claimed to have been agreed upon at one meeting with Calabrese and Domino and performed at another. Carella had testified before the grand jury in a manner exculpatory to both Domino and himself. Domino says he wished to call Carella as a witness but considered himself precluded by a direction by the same judge at the previous trial that no defendant might call another.

The argument is somewhat the converse of that in United States v. Arcuri, 405 F.2d 691, 695 (2 Cir. 1968), where we rejected a contention that defendants had been prejudiced by the severance of a codefendant who, when subpoenaed, lawfully claimed her Fifth Amendment privilege. A joint trial presents a harder problem. On the one hand, a defendant is entitled to the testimony of a codefendant, United States v. Bronson, 145 F.2d 939, 943 (2 Cir. 1944); United States v. Arcuri, *supra*, unless the codefendant blocks the road with a justified claim of privilege. On the other hand, to call the codefendant to the stand and force him to make such a claim before the jury would infringe his Fifth Amendment rights. United States v. Housing Foundation of America, 176 F.2d 665 (3 Cir. 1949); 8 Wigmore, Evidence § 2268 at 406–10 (McNaughton rev. 1961).

It does not follow, however, that denial of a severance whenever a defendant professes a desire to take a codefendant's testimony is inevitably prejudicial. Here, if Carella's trial had been severed and he had been called at Domino's with his own case untried, there is no reason to believe he would not have claimed his privilege.[1] All that Domino could have

1. When a problem of the sort discussed in the text arises, exploration of the situation outside the presence of the jury would seem desirable.

derived from calling him in that event would thus have been such inference of guilt as arose from his claim. But that would have hurt Domino rather than helped him. This was not a case where the complaining defendant contends the codefendant committed the crime and he did not; to the contrary, the charge against Carella was that he was helping Domino and Calabrese, so that if Carella was guilty, Domino must also have been. The argument thus has to be that Domino was entitled not only to have Carella's case severed but to have it tried first, in the hope that an acquittal might render Carella both a willing and a useful witness.[2] We do not undertake to decide whether a case could arise where so radical a solution might be called for, although it is easy to perceive the complications that might exist if each defendant demanded that the other be tried first, compare De Luna v. United States, 308 F.2d 140 (5 Cir. 1962). It suffices here that in light of the verdict against Carella, we are unconvinced that the denial of a severance was prejudicial to Domino.

■ We can dispose more briefly of two other arguments by Domino with respect to Carella. The Government was allowed to offer, against Carella only, four pages of his grand jury testimony wherein he denied knowledge of a keyboard in the garage at which he worked; in light of the testimony of other witnesses this was contended to show Carella had been lying. Domino claims that such evidence of Carella's awareness of guilt was necessarily incriminatory of Domino as his alleged partner in crime. Thus, the argument runs, the introduction of the grand jury testimony created a substantial risk that, despite the instructions to the contrary, the trial jurors would consider it against Domino, in violation of his Sixth Amendment rights under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). We find Bruton wholly inapposite. The excerpts introduced in no way referred to Domino; they were limited strictly to Carella's denial—false on the Government's view—of knowledge of a fact pertaining to his own participation in the crime. Reversing field, and apparently relying on United States v. De Sisto, 329 F.2d 929 (2 Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), Domino then sought to introduce portions of Carella's grand jury testimony exculpating him. But De Sisto applies only when the witness who gave the grand jury testimony is on the stand and Carella was not.

Before the first trial began, defendant Erhart had been determined to be indigent and had been assigned counsel. During that trial the attorney was furnished with a full transcript of Calabrese's direct testimony to aid cross-examination. After the mistrial the same attorney moved that the Government be required to furnish him with a transcript of the entire trial;[3] the court denied this. Calling our attention to the more liberal practice in the New York State courts, People v. Ballott, 20 N.Y. 2d 600, 286 N.Y.S.2d 1, 233 N.E.2d 103 (1967), and citing Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055 (1956), Erhart contends this deprived him of rights guaranteed by the Fifth Amendment.

■ To sustain the contention would give Griffin and its progeny, such as Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1965), Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967), Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Roberts v. La Vallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41

2. While a conviction might also have made Carella a willing witness after appellate procedures had been exhausted, he would not have been a useful one on the facts here presented.

3. The transcript of the second trial is 2300 pages long.

(1967), a wooden application not justified by either their language or their high purpose. The Court's objective has not been to place the poor defendant on a basis of perfect equality with the rich one, which is manifestly impossible, see Griffin v. Illinois, 351 U.S. at 23, 76 S.Ct. at 592 (concurring opinion of Mr. Justice Frankfurter), but rather, as stated in Roberts v. La Vallee, *supra*, 389 U.S. at 42, 88 S.Ct. at 196, to outlaw differences, based on the financial situation of the defendant, "in access to the instruments needed to vindicate legal rights." We are unwilling to say that a full transcript of a lengthy former trial, much of it relating to matters of no true concern to the indigent defendant, is invariably "needed," however convenient it might be for counsel thus to be able to avoid having to think out what he truly requires. By no means every nonindigent defendant would indulge in such extravagance,[4] although a truly rich one very likely would. Erhart had an abundance of impeaching material—the § 3500 statements and grand jury testimony of many of the Government's witnesses, his counsel's notes and recollection of the earlier trial, and, most important, the direct testimony at the first trial of Calabrese whose evidence Erhart's brief characterizes as the basis of the entire prosecution case against him. Furthermore the record reveals that counsel for Domino had the first-trial testimony of the two coconspirators who were the Government's other prime witnesses, and there is nothing to indicate he would have declined to allow Erhart's counsel to make any use of it that was wished. Erhart has pointed to no instance where a transcript of the previous trial could possibly have assisted him. Under these circumstances we decline to reverse Erhart's conviction for what seems an eminently sensible ruling by the trial judge. Contrast United States ex rel. Wilson v. McMann, 2 Cir., 408 F.2d 896, this day decided.

We have carefully reviewed all of appellants' other arguments but do not consider them to need discussion.

Affirmed.

---

4. Domino and Carella who did not claim indigency, apparently did not think it worthwhile to obtain a complete transcript of the first trial.