**UNITED STATES of America,**
**Appellee,**

v.

**Angelo RUSSO, Appellant.**

**No. 504, Docket 33232.**

United States Court of Appeals
Second Circuit.

Argued May 20, 1969.

Decided July 18, 1969.

---

Gerald E. Farrell, Wallingford, Conn., for appellant.

John Cassidento, Asst. U. S. Atty., (Jon O. Newman, U. S. Atty., for the District of Connecticut, on the brief), for appellee.

Before LUMBARD, Chief Judge, and HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

Appellant and codefendants Montalto, Rosa and Mahler were convicted, upon a trial by jury, of transporting stolen goods in interstate commerce in violation of 18 U.S.C. § 2314 (1964), as amended (Supp. IV 1965–68), and, together with codefendant Iacovelli, of conspiring in violation of 18 U.S.C. §

371 (1964) to violate 18 U.S.C. §§ 2314 and 2315 (1964), as amended (Supp. IV 1965–68). The convictions were based upon the shipment from Stamford, Connecticut to New York City of goods stolen from the Stamford plant of Clairol, Inc. See United States v. Evanchik, 413 F.2d 950 (2d Cir., July 16, 1969).

Appellant contends on this appeal that there was insufficient evidence to sustain his conviction, that the court erred in denying a codefendant's motion for a separate trial, that there were errors in the charge, and that the indictment was illegally obtained. We have considered the assignments of error and find no ground for reversal. The judgment of conviction is affirmed.

### 1. *Sufficiency of the evidence.*

The evidence established that Joseph Nuro, a co-conspirator who pleaded guilty, was one of a number of men who were systematically stealing goods from the Clairol plant. Nuro was approached by the codefendant Rosa, who suggested the theft of the goods from the original thieves. Agreement was reached, the goods were stolen and transported by rented truck to Brooklyn, where they were delivered to the codefendant Mahler for sale and distribution.

The truck in which the stolen goods had been transported was parked in Brooklyn. A few days after the theft Nuro and Rosa drove from Stamford to Brooklyn in a car rented from a garage in Brooklyn. When they reached Brooklyn they met appellant who returned the car in which they had driven from Stamford to the rental garage. Nuro and Rosa took the truck back to the garage in Connecticut.

About a week later appellant took part with Nuro, Rosa, and the codefendant Montalto in a meeting at the 1717 Club in Brooklyn, where payment for the stolen shipment was discussed. Because Mahler did not appear appellant told Philip Travers, a codefendant who was acquitted, to call Mahler's wife to find out where Mahler was. Appellant later assured Nuro that Mahler could be

trusted and that they would be paid; they were paid several days later. Thereafter appellant and Mahler traveled to Connecticut to discuss stealing another truckload of Clairol products, though nothing came of that plan.

From this evidence the jury could find not only that appellant was involved in the same conspiracy in which his associates were so clearly involved but also that he had participated in the illegal interstate transportation of stolen goods. The fact that at the time of the theft appellant resided in Brooklyn, where Mahler lived, and knew Mahler, and that he had previously resided in Stamford, where Rosa and Nuro lived, and knew Nuro, supports the inference that appellant was the contact between Mahler on the one hand and the Stamford people on the other. And the evidence that appellant engaged in the subsequent discussion in Stamford about stealing another truckload of Clairol products supports the conclusion that he had participated in the initial conspiracy and theft.

Viewing the evidence, as we must, most favorably to the government, see United States v. Marchisio, 344 F.2d 653, 662 (2d Cir. 1965), it is sufficient.

### 2. *Motion for a separate trial.*

Just prior to the date on which the trial was scheduled to begin in Bridgeport, Nuro, who was to be the main government witness, was shot. Rosa was indicted for the crime.

The trial was thereupon postponed for two weeks and transferred from Bridgeport to Hartford.

During the voir dire examination of the prospective jurors, one of the veniremen (who was ultimately excused), in response to the court's question whether he had heard of "an incident that occurred to a witness in the so-called Clairol case," responded: "I think I heard —I'm not sure—I'm not even sure it's the same case, but it seems as though somebody had been shot, but I don't know if that's the same case." After the jury had been empaneled a codefend-

ant moved for a separate trial, urging that the venireman's statement, made before the entire panel, coupled with the physical presence of Nuro, whose arm was in a cast, would prejudice the jury. The motion was denied. Appellant asserts that the denial of the codefendant's motion is reversible error as to him.

The circumstances here do not warrant a deviation from the general rule, see United States v. Kahn, 381 F.2d 824, 838 (7th Cir.), cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967), citing with approval United States v. Lebron, 222 F.2d 531, 535 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955), that persons joined in the same indictment should be tried together if there is a substantial amount of evidence common to the defendants. In addition to the fact that appellant did not move for a severance at the trial, the court, in its voir dire, ascertained that the jury knew little, if anything, about the shooting of Nuro.

### 3. *Charge to the jury.*

The court instructed the jury, pursuant to the request of two of appellant's codefendants, that no inference could be drawn from the failure of a defendant to testify. Appellant objected to the instruction and claims that it was error for the court to give it over his objection. The law, however, is just the contrary. Once the codefendants requested the charge it would have been error for the court not to give it. United States v. Kelly, 349 F.2d 720, 768–769 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966).

Appellant also claims that his Fifth Amendment right not to testify was infringed by the charge concerning inferences that might be drawn from the unexplained possession of recently stolen goods:

"Also, you may, but you are not required, to infer that the defendant

knew the merchandise was stolen if, and only if, you find that defendant was in possession of the stolen merchandise shortly after the time of theft and if, and only if, that possession from all the evidence was not satisfactorily explained to you. Possession of property recently stolen, if not satisfactorily explained from all the evidence, is a circumstance from which the jury, in the light of all the evidence, may infer that the person in possession knew the goods or merchandise had been stolen."

The claim is without merit. The government made no effort to show that appellant at any time was in possession of the stolen goods. Moreover, the charge was proper even as to those defendants who were shown to have had possession. See United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

### 4. Indictment.

■ Appellant's final claim is that the indictment should have been dismissed because it was based solely on hearsay testimony. However, in United States v. Carella, 411 F.2d 729 (2d Cir., Mar. 1969), we held that an indictment based on hearsay need not be dismissed if the prosecutor makes it clear to the grand jury that the testimony offered was hearsay, at least where there is good reason not to call a particular witness. See also United States v. Umans, 368 F.2d 725, 730 (2d Cir. 1966), cert. dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967).

Nuro testified once before the grand jury and perjured himself. He thereafter confessed to F.B.I. Agent Glossa who, in testifying before the grand jury, made it quite clear that portions of his testimony were hearsay. The decision to rely on hearsay testimony before the grand jury is amply supported by the subsequent attempt on Nuro's life. The prosecutor's concern for the safety of the witnesses he might have called was clearly justified.

Affirmed.