**UNITED STATES of America**

v.

**Evagelos FILIPPATOS, Defendant.**

**No. 68 Cr. 401.**

United States District Court
S. D. New York.

Dec. 18, 1969.

---

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, by Arthur A. Munisteri, Asst. U. S. Atty., for the United States.

Daniel H. Greenberg, New York City, for defendant.

OPINION

TYLER, District Judge.

Defendant Filippatos was charged with four counts of interstate transportation of a forged security in violation of 18 U.S.C. § 2314. On October 21, 1969 a jury returned a verdict of guilty on all four counts. I now consider the renewed motion of defense counsel for a judgment of acquittal and dismissal of the indictment on the grounds that the evidence presented to the grand jury which returned the indictment was entirely hearsay.

The sole witness before the grand jury was David E. Cassens, an agent of the FBI, who testified to the essential elements of the crime: that the money orders were blank when they passed out of the hands of appropriate vendors, that the endorsement on each money order was in the handwriting of the defendant, that the money orders were drawn on a bank in New Jersey and that they were cashed at four separate locations in New York. With one exception,[1] all this testimony was based on hearsay. Save for the testimony that the money orders were blank when allegedly stolen and that they were drawn on a bank in New Jersey, all the testimony was clearly labelled as hearsay. Since the testimony on those two points came at the end of the agent's testimony and was obviously based on what had gone before, it should have been clear to the grand jury that it was also testimony founded on hearsay. See United States v. Beltram, 388 F.2d 449 (2d Cir. 1968).

At trial, the government presented five crucial witnesses. Witnesses Gomez, Berg and Wolff testified to having received the money orders which were the subject of Counts 1, 2 and 3 in New York as payment for goods. Witness Tuzzio, an employee of the express company issuing the money orders, testified that they were improperly made out and that they were duly presented for

1. It was presumably self-evident that the money orders were drawn on a bank in New Jersey.

collection at the bank in New Jersey on which they were drawn. Witness Shaneyfelt was a government handwriting expert who testified that the endorsements on the money orders were in the handwriting of the defendant. All of these witnesses, except Shaneyfelt, gave the gist of their essential testimony to FBI agents; thus, the reports of those agents and Shaneyfelt's FBI laboratory report were the basis on which Agent Cassens testified to the grand jury. Gomez and Wolff work in New York City. Berg works in Yonkers, Tuzzio in Newark, and Shaneyfelt is stationed in Washington, D. C. Under normal circumstances, one would assume that at least Gomez, Wolff and Tuzzio would be readily available for presentation to the grand jury. The government is frank to admit that it cannot reconstruct the circumstances at the time the testimony was given to the grand jury and so cannot represent that it would have been manifestly inconvenient to have had these witnesses testify directly to the grand jury. (Memorandum of Law at 17)

Very reasonably, the defendant does not make prejudice the central thrust of his case (Memorandum of Law on Behalf of Defendant, at p. 6). If they had been called before the grand jury, Tuzzio would have testified as to the business records of the express company and Shaneyfelt would have testified to his expert conclusions. Neither was in any sense an eyewitness. Nor was the grand jury told that Gomez, Berg or Wolff had said more than that the money orders were cashed at their places of business; because of the stamped endorsements or signatures on the money orders, this identification did not rely on memory of complex or clearly disputable events. This is not a case in which it is obvious that the grand jury would have seen any of the ragged edges of possibly contradictory testimony if the full array of witnesses had been called. Further, if direct testimony had been presented and the prosecutor had restricted his questions to those put to

Agent Cassens, it is hard to believe that he would have elicited material that would have been useful to the defense on cross-examination.

Aware of the difficulty of showing any prejudice to its case under these circumstances, the defense has forthrightly made the argument that, regardless of prejudice, the court must dismiss an indictment based solely on hearsay.

The historic function of the grand jury has been to stand between the prosecutor and the accused, to examine the evidence and testimony that the prosecutor presents or into which the grand jury itself inquires, and to hand down indictments founded on more than rumor or the malice of a prosecutor. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); 4 Blackstone 303. Though the indictment of the grand jury is no more than an accusation bearing no evidentiary value at trial and does not in any way change the presumption of the defendant's innocence, there can be no doubt that an indictment by a grand jury places on a defendant the heavy burdens of expending time, energy, and capital in the defense of his case and almost certainly of meeting the social opprobrium that shadows him while under the charge of the indictment. In addition, trial of charges brought without a sufficiently solid basis is wasteful of the courts' time and an improper abuse of public funds. Thus, it is appropriate that the court should seek certainty that the evidence presented to grand juries by its officers is such that the grand jury can receive a clear notion of the prosecutor's case. Grand juries which observe the demeanor of the government's witnesses and hear their stories from their own mouths are most likely to perform their historic function best.

A second important function for the grand jury has grown up in recent years with the provision, in the usual case, of witnesses' grand jury testimony to the defense for use in cross-examination. United States v. Youngblood, 379 F.2d 365 (2d Cir. 1967). This rule is a pre-

cipitate of the "growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." Dennis v. United States, 384 U.S. 855, 870, 86 S.Ct. 1840, 1849, 16 L. Ed.2d 973 (1966). If the prosecutor, with impunity and without limitation, may present nothing but hearsay to the grand jury, the underlying policies in *Youngblood* would become no more for a defendant than a taunting chimera.

Although both these policies work against allowing prosecutors to present hearsay to a grand jury, they must be weighed against the established place the grand jury holds in our judicial structure. The grand jury is an institution relatively free of the courts and possessing the power both to investigate and pass on whatever evidence is put before it or which it seeks out itself. This was the basis on which the Supreme Court refused to dismiss the indictment in a complex tax evasion case when the only evidence before the grand jury had been hearsay. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

The courts now face the difficult task of weaving into one rule the historic freedom of the grand jury and the protection of the defendant which the grand jury was established to provide. The Court of Appeals for the Second Circuit has stated its judgment of how the balance should be struck in United States v. Umans, 368 F.2d 725 (2d Cir. 1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L. Ed.2d 872, cert. dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967), a case in which the indictment was based solely on hearsay evidence:

> "While we are not condemning the procedure used here before the grand jury, we think it not amiss for us to state that excessive use of hearsay in the presentation of government cases to grand juries tends to destroy

the historical function of grand juries in assessing the likelihood of prosecutorial success and tends to destroy the protection from unwarranted prosecutions that grand juries are supposed to afford to the innocent. Hearsay evidence should only be used when direct testimony is unavailable or when it is demonstrably inconvenient to summon witnesses able to testify from personal knowledge." At 730.

Following *Umans* the circuit court refined its doctrine making it clear that hearsay presented as if it were direct testimony was a fault clearly worse than presentation to the grand jury of hearsay testimony clearly labelled as such, United States v. Beltram, 388 F.2d 449 (2d Cir. 1968), and that while the grand jury need not be told in so many words that it is listening to hearsay, it should be clear to the panel that it was not hearing direct testimony. United States v. Malofsky, 388 F.2d 288 (2d Cir. 1968), cert. denied, 390 U.S. 1017, 88 S.Ct. 1273, 20 L.Ed.2d 168. There is nothing in the case at bar to suggest a violation of the emerging rule against misleading hearsay.

During the same period the circuit court has refused to dismiss a number of indictments based solely on hearsay, frequently noting that all these indictments were returned before or within a week of the decision in *Umans*. United States v. Andrews, 381 F.2d 377 (2d Cir. 1967); United States v. Malofsky, *supra,* United States v. Messina, 388 F.2d 393 (2d Cir. 1968), cert. denied, 390 U.S. 1026, 88 S. Ct. 1413, 20 L.Ed.2d 283; United States v. Beltram, *supra,* United States v. Catino, 403 F.2d 491 (2d Cir. 1968). While these cases do not directly state a rule that indictments will be dismissed where hearsay has been excessively used when it was not "demonstrably inconvenient to summon witnesses able to testify from personal knowledge," they plainly indicate that following *Umans* a change in prosecutorial practice was expected.[2]

---

2. Assurances have been received that the prosecutors are following the policy of

*Umans* and its progeny in the Southern and Eastern Districts of New York,

It was against this background that the case of United States v. Arcuri, 282 F.Supp. 347 (E.D.N.Y.1968) was decided in the Eastern District of New York. That case involved an indictment based solely on hearsay, and after reviewing the principles and the cases on this problem, Judge Weinstein made a prospective ruling:

"a timely motion to dismiss an indictment handed down after March 31 of 1968 will be granted without a showing of prejudice to the defendant if it is clear that hearsay alone was deliberately relied upon when better evidence was readily available for presentation to the grand jury." At 351.

Arcuri was taken up to the circuit court which once more reviewed the cases and then, in dealing with the case at bar, repeated the language of Judge Weinstein just quoted, and added:

"In light of the precedents we find no sufficient basis for disturbing the court's refusal to dismiss this indictment. We repeat, however, the warnings to prosecutors given in Umans and Catino." United States v. Arcuri, 405 F.2d 691, 694 (2d Cir. 1968).

I read this to mean that Judge Weinstein's ruling on the point stands undisturbed. Any indictment returned after March 31, 1968 which comes before his court will be dismissed if it fails to meet the standards set forth in his Arcuri opinion. It logically follows that from the day the circuit court allowed that rule to stand in the Eastern District of New York, it must have expected a similar rule to be followed by all the district courts within its jurisdiction. I hold, therefore, that any indictment returned after December 9, 1968, the date of the circuit court's decision in Arcuri, in which it is "clear that hearsay alone was deliberately relied upon when better evidence was readily available for presentation to the grand jury" will be dismissed without a showing of prejudice to the defendant.[3] To do less would create out of the warnings of Umans and the cases which have followed it a misleading legal fiction which holds out to a defendant the assurance of a right for the violation of which the court is unwilling to provide a remedy.

Nonetheless, it must be plainly stated that up until this date the circuit court has refused to quash an indictment grounded totally on hearsay. Most pointedly, the circuit court has refused to quash indictments in two cases which have followed its decision in United States v. Arcuri: United States v. Covello, 410 F.2d 536 (2d Cir. 1969), and United States v. Russo, 413 F.2d 432 (2d Cir. 1969). In Russo, the circuit court pointed out that there was an attempt on the life of the principal government witness not called and held that this justified the government in not presenting that witness to the grand jury.[4] In Covello the circuit court restated the disapproval it had expressed in Umans, Catino, and Arcuri, but refused to quash the indictment. The Covello indictment was returned before the decision in Arcuri. The decisions are reconciled by ruling that indictments based solely on hearsay when direct testimony was available will be quashed, without a showing of prej-

United States v. Arcuri, 405 F.2d 691, 693 (2d Cir. 1968), and in the District of Connecticut, United States v. Messina, 388 F.2d 393 (2d Cir. 1968).

3. I use this formula not to raise the spectre of a scintilla of direct evidence rule, but in order to meet the facts of the present case and to remain within the rulings of the circuit court as I read them.

4. It is unclear from both circuit court's opinion in United States v. Carella, 411 F.2d 729 (2d Cir. 1969) and from the circuit court's discussion of Carella in its Russo opinion whether Carella is another case in which the indictment was based solely on hearsay. It is certainly clear that the testimony of the government's chief witness in Carella was presented through hearsay and that threats had been made against the witness' life. The circuit court held those circumstances sufficient to justify not calling the witness to give direct testimony to the grand jury. 411 F.2d 729, 731.

udice by the defendant, if returned after December 9, 1968, but not if returned before that date.

The indictment in this case was returned on May 2, 1968. There is no showing of prejudice to the defendant in this case. Accordingly, the motion to enter judgment of acquittal and dismiss the indictment is denied. It is so ordered.