**UNITED STATES of America,**
**Appellee,**

v.

**Wilson RAMIREZ et al., Appellants.**
**Nos. 969–971, Dockets 73–1364, 73–1365**
**and 73–1396.**

United States Court of Appeals,
Second Circuit.

Argued June 14, 1973.

Decided July 25, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 581.

Phylis Skloot Bamberger, New York City (The Legal Aid Society, Robert Kasanof, New York City, on the brief), for appellant Ramirez.

Donald E. Nawi, New York City, for appellant Gomez.

Harry R. Pollak, New York City, for appellant Gutierrez.

Nicholas Figueroa, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S.D.N.Y. and Jay S. Horowitz and John W. Nields, Jr., Asst. U. S. Attys., on the brief), for appellee.

Before KAUFMAN, Chief Judge, SMITH, Circuit Judge, and BRYAN,* District Judge.

FREDERICK van PELT BRYAN, District Judge:

Wilson Ramirez, Hector Gomez and Inez Velez Gutierrez appeal from judg-

---

* Of the United States District Court, Southern District of New York, sitting by designation.

ments of conviction entered in the Southern District of New York after a jury trial before Judge Pierce. All three were found guilty on Counts One and Two of an indictment charging them and Umberto Ramirez with distributing cocaine and possessing it with intent to distribute, and conspiring to do so in violation of 21 U.S.C. §§ 812, 841 and 846. Wilson Ramirez was also convicted on a third count of carrying a firearm unlawfully during the commission of the felonies charged in Counts One and Two, 18 U.S.C. § 924(c)(2).[1] We affirm the convictions of all three appellants on Counts One and Two and reverse the conviction of Wilson Ramirez on Count Three, with a direction for the entry of judgment of acquittal on that count.

The main issues on this appeal are (1) whether the grand jury which returned the indictment was misled into believing it was receiving eyewitness testimony rather than the hearsay testimony it in fact received; and (2) whether the Wilson Ramirez conviction on Count Three must be reversed because of failure of proof and error in the charge. In addition, appellants raise several other minor points.

A brief recital of the facts concerning this sale of half a kilogram of cocaine to two undercover agents, Jose Guzman and Kenneth Bernhardt, will place the contentions in focus.

On August 1, 1972, Guzman met Umberto Ramirez (Umberto) at La Princessa restaurant, at 100th Street and Broadway in Manhattan, and told him that he wanted to buy half a kilogram of cocaine for a friend, and, if the price was right, two ounces for himself. Umberto quoted prices of $10,000 for the half-kilogram and $1,100 for the two ounces. The two agreed to meet the next day at the same place.[2]

Guzman returned to La Princessa the next day but left when he could not find Umberto. Outside the restaurant Guzman then met Gomez. In reply to Guzman's inquiry, Gomez told him that Umberto had been at the restaurant earlier and would return soon. Shortly thereafter Guzman joined Umberto and Gomez in front of the restaurant. Umberto told Guzman that his "connection" had left. In reply to a question from Umberto, Gomez stated that he had an "eighth" for sale. After consulting with Bernhardt, who was posing as his partner, Guzman said his partner was interested only in the purchase of half a kilogram.

Subsequently, Wilson Ramirez (Wilson) arrived and was introduced to Guzman by Umberto as the "main man" who could supply "three-eighths" which, added to Gomez' one-eighth, would comprise the sought-after half.

Bernhardt, who remained seated in a car, displayed the $10,000 in bills for the purchase to Umberto, and then Guzman, Gomez and Umberto and Wilson went to Room 405 of the Whitehall Hotel. Wilson produced three plastic bags containing cocaine. He weighed them on a scale in the room; each weighed one-eighth of a kilogram. He then told Gomez to pick up his "eighth" and told Umberto to go with Guzman to the car to count the $10,000.

After Umberto counted the money, he left the car. He soon returned, accompanied by Wilson, Gomez, and Gutierrez. Gomez, referring to Gutierrez, told Guzman that "China" had the "stuff". Gomez, Gutierrez and the two Ramirezes entered the back of the car, with Guzman and Bernhardt sitting in front.

---

1. Ramirez was sentenced to five years imprisonment on Counts One and Two, to run concurrently, and five years imprisonment on Count Three, to run consecutively to the terms imposed on Counts One and Two. Gomez was sentenced to concurrent five-year terms on Counts One and Two. Both Ramirez and Gomez also received three years of special parole under 21 U.S.C. § 841. Gutierrez was placed on probation for three years. The fourth defendant, Umberto Ramirez, was a fugitive at the time of the trial.

2. All of the negotiations were conducted in Spanish.

Wilson told Gutierrez to give Guzman "the coke." Gutierrez took an opaque package containing the half kilogram of cocaine out of her handbag and handed it to Guzman. At this point, upon a signal, surveillance agents arrested Gomez, Gutierrez and the two Ramirezes, and simulated the arrest of the undercover agents. Wilson Ramirez was found with a Luger pistol in the waistband of his trousers.

## I

In Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), the Supreme Court held that an indictment may permissibly be based solely upon hearsay. *See also* Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L. Ed.2d 321 (1958). That rule was qualified by this Court in United States v. Estepa, 471 F.2d 1132, 1136 (2d Cir. 1972), holding that where the grand jury is " 'misled into thinking it is getting eye-witness testimony from the agent whereas it is actually being given an account whose hearsay nature is concealed . . . .' United States v. Leibowitz, 420 F.2d 39, 42 (2 Cir. 1969)," the convictions should be reversed and the indictment dismissed.

Dismissal of the indictment in *Estepa* was ordered in the wake of a substantial number of earlier cases in this circuit warning prosecutors that dismissal would ensue where the grand jury was misled as to the hearsay nature of the evidence before it. *See* United States v. Leibowitz, 420 F.2d 39 (2d Cir. 1969);

United States v. Russo, 413 F.2d 432 (2d Cir. 1969); United States v. Carella, 411 F.2d 729 (2d Cir. 1969); United States v. Arcuri, 405 F.2d 691 (2d Cir. 1968), cert. denied, 395 U.S. 913, 89 S. Ct. 1760, 23 L.Ed.2d 227 (1969); United States v. Catino, 403 F.2d 491 (2d Cir. 1968), cert. denied, 394 U.S. 1003, 89 S. Ct. 1598, 22 L.Ed.2d 780 (1969); United States v. Beltram, 388 F.2d 449, 451–452 (2d Cir.) (dissenting opinion) cert. denied, 390 U.S. 1017, 88 S.Ct. 1273, 20 L. Ed.2d 168, 391 U.S. 955, 88 S.Ct. 1860, 20 L.Ed.2d 869 (1968); United States v. Andrews, 381 F.2d 377 (2d Cir. 1967), cert. denied, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968); United States v. Payton, 363 F.2d 996, 999–1000 (2d Cir.) (dissenting opinion), cert. denied, 385 U.S. 993, 87 S.Ct. 606, 17 L.Ed.2d 453 (1966).[3] Appellants seek to bring themselves within the *Estepa* holding.

Neither Guzman nor Bernhardt, who naturally were the principal prosecution witnesses at the trial, testified before the grand jury. The sole witness before the grand jury was Patrolman Daniel J. Mullen, whose limited role as a surveillance agent prevented him from having personal knowledge of what transpired when the sale was negotiated and consummated. Mullen did not testify at the trial because of illness.

The trial in this case took place prior to the decision in *Estepa*. A pretrial motion for permission to examine the grand jury minutes on the ground that the indictment was based on insufficient and inadmissible testimony was denied by the

3. This Court has also cautioned against unnecessary use of hearsay testimony when the eyewitnesses are reasonably available to testify before the grand jury. *See* United States v. Estepa, 471 F.2d 1132, 1135–1136 (2d Cir. 1972); United States v. Leibowitz, 420 F.2d 39 (2d Cir. 1969); United States v. Russo, 413 F.2d 432 (2d Cir. 1969); United States v. Carella, 411 F.2d 729 (2d Cir. 1969); United States v. Arcuri, 405 F.2d 691 (2d Cir. 1968), cert. denied, 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969); United States v. Catino, 403 F.2d 491 (2d Cir. 1968), cert. denied, 394 U.S. 1003, 89 S.Ct. 1598, 22 L.Ed.2d 780

(1969); United States v. Beltram, 388 F.2d 449, 451–453 (2d Cir.) (dissenting opinion), cert. denied, 390 U.S. 1017, 88 S.Ct. 1273, 20 L.Ed.2d 168, 391 U.S. 955, 88 S.Ct. 1860, 20 L.Ed.2d 869 (1968); United States v. Umans, 368 F.2d 725, 730–731 (2d Cir. 1966), cert. granted, 386 U.S. 940, 87 S.Ct. 975, 17 L.Ed.2d 872 cert. dismissed as improvidently granted, 389 U.S. 80, 88 S.Ct. 253, 19 L.Ed.2d 255 (1967); United States v. Payton, 363 F.2d 996, 1000 & n. 1 (2d Cir.) (dissenting opinion), cert. denied, 385 U.S. 993 (1966). That caution is repeated and reemphasized here.

trial judge. At the trial, defense counsel learned for the first time that Bernhardt and Guzman were the only officers present during the discussions leading to the purchase of the drug and at the purchase transaction and that Patrolman Mullen, who was merely a surveilling officer, was the only witness before the grand jury.

At the close of the Government's case, the defense moved for dismissal of the indictment on the ground that there was insufficient legal evidence to support it. The trial court declined to examine the grand jury minutes or to permit defendants' counsel to do so. He denied the motion to dismiss, citing Costello v. United States, *supra,* and Lawn v. United States, *supra,* holding that an indictment is valid even though based on hearsay.

█ The grand jury minutes were handed to us by the prosecution at the argument of the appeal and made available to defense counsel. Our examination of the minutes makes it quite plain that the grand jury was not misled into believing it was getting an eyewitness account. Thus, in developing before the grand jury what occurred in the hotel, the Assistant United States Attorney first established that the appellants, Umberto, and the undercover agents were "out of . . . Mullen's sight" at that time. The prosecutor then inquired whether Patrolman Mullen had "ascertained from them [the undercover agents who were present]" what happened and Mullen said he had. As to the crucial events in the automobile, the prosecutor specifically established that Mullen was not able to observe those events himself,[4] and that the undercover agents had informed him about what occurred.

Accordingly, while we adhere to *Estepa,* we find that the government has not violated the rule of that case here.

██ In the light of *Estepa,* where it appears that the grand jury has heard only hearsay testimony, upon appropriate motion, the proper course for the trial judge to follow is to examine the grand jury minutes *in camera*[5] to determine whether or not the grand jury was misled into believing it was given eyewitness testimony when in fact it was not. Here no *Estepa* claim was made before the trial court. It is apparent, however, that defendants were not prejudiced in any way by the fact that the trial court did not examine the grand jury minutes, since, as our reading of the minutes demonstrates, the *Estepa* ruling was not violated. Defendants are, therefore, not entitled to reversal on this ground.

██ In his reply brief, Ramirez complains, for the first time, that counsel was entitled to examine the grand jury testimony of Mullen, who repeated the information given him by the offi-

---

4. Q. With respect to the automobile occurrence *before you saw the signals,* when the lights were flashing, did you actually see any part of what was taking place inside the car or was that beneath your eye level?

A. It was impossible in the daytime with the glare of the windows, I was just waiting for the signals.

Q. What you are saying is that when Inez Valex (sic) handed the package to Umberto Ramirez—that is what was told to you by the officers in the car?

A. Yes, sir, the undercover agents.

Q. What you told us with respect to the persons who counted the money, Hector Gomez and Umberto Ramirez, again that is what was told to you by the

undercover officers and you couldn't actually see them counting the money?

A. No, I couldn't see them counting the money.

(The grand jury minutes consist of only nine pages.)

5. Cf. Dennis v. United States, 384 U.S. 855, 875, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (disclosure of grand jury minutes subject to *in camera* deletion of "extraneous material"); Palermo v. United States, 360 U.S. 343, 354, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959) (whether the Jencks Act, 18 U.S.C. § 3500, requires disclosure of document to the defense); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (disclosure of informant's identity).

cers with personal knowledge of the events involved. In United States v. Borelli, 336 F.2d 376, 391 (2d Cir. 1964), cert. denied, 379 U.S. 960, 85 S. Ct. 647, 13 L.Ed.2d 555 (1965), this Court stated,

"The Government ought not be allowed, by having its principal witness speak to the grand jury through the voice of another, to deprive a defendant of . . . [the] right to impeach by contradiction."

The 1970 amendment to the Jencks Act, 18 U.S.C. § 3500(e)(3), which codified this Court's holding in United States v. Youngblood, 379 F.2d 365 (2d Cir. 1965), entitles a defendant to the grand jury testimony of a government trial witness without any preliminary inspection for usefulness by the trial judge. Reading *Borelli, Youngblood,* and § 3500 together, it appears that defendants would have been entitled to examine Mullen's grand jury testimony. However, since no request for such an examination on this ground was made below, Ramirez cannot raise the point now. United States v. Andrews, 381 F.2d 377, 378 (2d Cir. 1967), cert. denied, 390 U. S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968).

## II

Ramirez challenges the sufficiency of the evidence and the correctness of the charge, on the third count of the indictment. This count charged him with violating 18 U.S.C. § 924(c)(2), which provides in pertinent part:

(c) Whoever—

(1) uses a firearm to commit any felony for which he may be prosecuted in a court of the United States, or

(2) carries a firearm unlawfully during the commission of any felony for which he may be prosecuted in a court of the United States.

shall, in addition to the punishment provided for the commission of such felony, be sentenced to a term of imprisonment for not less than one year or more than ten years. . . .

Section 924(c) was enacted by Congress as part of the Gun Control Act of 1968, Pub.L. 90–618, 82 Stat. 1224. This section creates a separate crime, rather than merely providing an additional penalty. United States v. Vigil, 458 F.2d 385 (10th Cir. 1972); United States v. Sudduth, 457 F.2d 1198 (10th Cir. 1972); 114 Cong.Rec. (Part 17 11121) (1968) (Remarks of Representative Poff).

Where Ramirez and the Government part company is over the meaning of "unlawfully" as used in section 924(c)(2). Ramirez contends that an essential element of a violation of section 924(c)(2) is that the possession (or "carrying") of the firearm must itself be unlawful. We agree.

The language of the statute plainly supports the Ramirez position. The location of the adverb "unlawfully" signifies a manifest intention on the part of Congress to modify the phrase "carries a firearm." A common sense reading of the statute, therefore, leads directly to the conclusion that there is no violation of section 924(c)(2) unless the carrying of the firearm is unlawful.

Moreover, the legislative history of the statute conclusively demonstrates that an essential element of the crime is that the possession be unlawful.

Section 924(c), as originally proposed, did not make it a federal crime to carry a firearm unlawfully in the commission of a federal felony. Instead, both the House and Senate bills merely provided for the forfeiture of any firearm or ammunition used in such a crime. H.R. 17735, 90th Cong., 2d Sess. (1968); H. R.Rep.No.1577, 90th Cong., 2d Sess. (1968); S.3633, 90th Cong., 2d Sess. (1968); S.Rep.No.1501, 90th Cong., 2d Sess. (1968).

Representative Casey proposed an amendment to the bill to punish any person who "uses or carries" a firearm, during the commission of certain violent crimes, if the firearm had been transported in interstate commerce. 114 Cong.Rec. 21061–63, 21765–66 (1968).

Concern developed among various congressmen as to whether a person carrying a gun, who is authorized by law to do so, such as a policeman or a licensee, would violate the proposed law if he committed an assault without using the gun. *Id.* 21788–89. Indeed, Representative Scheuer was concerned that the bill might apply to him, since he had a pistol permit, if he committed an assault while lawfully carrying a pistol, even though he did not in any way utilize it in the assault. *Id.* Representative Casey agreed that such a person should not be within the statute. *Id.* 21792, 22231. For this purpose, a proposal by Representative Dowdy was adopted and the words "or carries" were stricken from the bill, so that only *use* of a firearm was to be proscribed. *Id.* 22235–37.

Representative Poff had previously offered an alternative amendment which ultimately became section 924(c). The Poff amendment based jurisdiction on the commission of a federal felony, rather than upon the fact of a gun traveling in interstate commerce. This amendment, reflecting the above debates, provided that carrying a gun *unlawfully* during the commission of such a felony was a crime. *Id.* 22231. A proposal to eliminate the word "unlawfully" was defeated, and the word remained in the Poff amendment. *Id.* 22236 (Remarks of Representative Meskill), 22245.

Subsequently, the Poff amendment was preferred over the Casey amendment, *id.* 22248, agreed to, *id.* 23094–95, and passed as part of the bill. *Id.* 23095. The Senate thereafter adopted the House bill. *Id.* 27492.

Thus, the legislative history plainly shows that carrying a firearm, without using it, during the commission of a federal felony, violates section 924(c)(2)

only if possession of the firearm is itself unlawful.

The Government's contention to the contrary, that the statute only exempts police officers, has no support in either the language of the act or the legislative history.

The trial Judge did not instruct the jury that, before they could find Ramirez guilty on this count, they must find that Ramirez' possession of the pistol was itself unlawful.[6] The failure to instruct the jury on this essential element of the crime requires reversal of Wilson Ramirez' conviction on Count Three, Screws v. United States, 325 U.S. 91, 101–107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); United States v. Clark, 475 F.2d 240, 248–249 (2d Cir. 1973); United States v. Fields, 466 F.2d 119 (2d Cir. 1972); United States v. Byrd, 352 F.2d 570, 572–574 (2d Cir. 1965), even though no objection was lodged below. Screws v. United States, supra, 325 U.S. at 107, 65 S.Ct. 1031; United States v. Clark, *supra*, 475 F.2d 574 at 250; United States v. Fields, *supra*; United States v. Byrd, *supra*, 352 F.2d at 574.

Moreover, Wilson Ramirez' conviction on Count Three cannot stand for an additional reason; the Government did not introduce any evidence whatsoever tending to show that his possession of the pistol was unlawful. Accordingly, denial of Ramirez' motion for a judgment of acquittal was error. Forman v. United States, 361 U.S. 416, 425–426, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960) (dictum); Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955); United States v. Kearse, 444 F.2d 62 (2d Cir. 1971). *See also* Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); Thompson v. City of Louisville,

---

6. The judge merely read from the indictment, which charged that Ramirez "unlawfully, wilfully, and knowingly did carry a firearm . . . during the commission of a felony." He further referred to the standard definition of "unlawfully" which he had given earlier. That earlier definition was: "Unlawfully means con-trary to law. It is not necessary that a defendant knew that he or she was violating any particular law. Rather, it is sufficient if you are convinced beyond a reasonable doubt that he or she was aware of the general unlawful nature of his or her act."

362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

### III

Appellants Gomez and Gutierrez contend that the trial court erroneously failed to charge the jury on entrapment. We see no merit in this claim.

■ At the trial, no request for an entrapment charge was made, and no objection was taken to the failure so to charge. An entrapment defense would have been inconsistent with the defenses these defendants offered at trial.[7] For the trial Judge, under such circumstances, to have *sua sponte* charged entrapment, might have cast doubt upon the defense proffered. Accordingly, the failure to charge entrapment was not error, to say nothing of plain error. United States v. Nolan, 420 F.2d 552, 555 (5th Cir. 1969), cert. denied, 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 47 (1970); Chavira Gonzales v. United States, 314 F.2d 750 (9th Cir. 1963); Jones v. United States, 299 F.2d 661 (10th Cir.), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101 (1962); Moore v. United States, 104 U.S. App.D.C. 327, 262 F.2d 216 (1958), cert. denied 359 U.S. 959, 79 S.Ct. 800, 3 L.Ed. 2d 767 (1959).

■ Moreover, denial of a request to charge entrapment, had one been made in the district court, would have been proper because considering the trial testimony in the light most favorable to the defendants, there was no evidence negating propensity. See United States. v. Greenberg, 444 F.2d 369 (2d Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 93, 30 L. Ed.2d 93 (1971); United States v. Cohen, 431 F.2d 830 (2d Cir. 1970); United States v. Bishop, 367 F.2d 806, 810 (2d Cir. 1966); United States v. Riley, 363 F.2d 955, 959 (2d Cir. 1966).

### IV

Gutierrez also contends that a post-arrest statement made to an Assistant United States Attorney, prior to the time counsel was actually appointed to represent her, was erroneously admitted at trial. The trial Judge, after holding a hearing out of the presence of the jury, determined that Gutierrez was advised of her constitutional rights, pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including her right to counsel, waived them, and voluntarily made the statement which was a denial of possessing or transferring cocaine.

On the day in question, prior to 2:00 P.M., counsel eventually appointed to represent Gutierrez received a telephone call directing him to appear before the magistrate at 2:00 P.M. for "possible" or "actual" assignment. He was not given the name of any particular defendant, and was not actually appointed to represent Gutierrez until sometime after 2:45 P.M., when Gutierrez was brought before the magistrate and, presumably, Gutierrez' financial means were ascertained. Between 2:00 and 2:45 P.M., Gutierrez had made the statement at issue.

■ Counsel has cited no case supporting the claim that, under these circumstances, the statement was not admissible. We see no warrant for extending Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) to cover the situation before us, since the statment was made prior to indictment as well as before the actual appointment of counsel. *See* Collins v. Wilson, 368 F.2d 995 (9th Cir. 1966). Nor would the fact that the questioning by an Assistant United States Attorney occurred just prior to arraignment, when it might be anticipated that coun-

7. Gomez testified in his own defense that although he was present when the cocaine was delivered to the undercover agents, he did not know what was happening.

Gutierrez similarly testified that she did not know that the package she handed to the undercover agents contained cocaine.

sel will be appointed at the arraignment, furnish a basis for excluding the statement. *Cf.* United States v. Ortega, 471 F.2d 1350, 1362 (2d Cir. 1972), cert. denied, 411 U.S. 948, 93 S.Ct. 1924, 36 L. Ed.2d 409 (1973); United States v. Marrero, 450 F.2d 373 (2d Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972). *But cf. id.* at 379 (Friendly, C. J., concurring).

## V

The remainder of appellants' contentions require little, if any, discussion.

█ Gutierrez' contention that the evidence was not sufficient to support her conviction is devoid of merit. Considering the evidence in the light most favorable to the prosecution, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Christophe, 470 F.2d 865, 869 (2d Cir. 1972), cert. denied, 411 U.S. 684, 93 S. Ct. 2140, 2162, 36 L.Ed.2d 684 (1973), the jury plainly could have inferred that Gutierrez knew what she was doing when she handed the package containing the cocaine to one of the undercover agents after Wilson Ramirez instructed her, "Give the man the coke."

█ While Gutierrez' participation may have been limited to "a single act," as she contends, that act was the consummation of the crimes charged and the jury could reasonably have inferred that Gutierrez knowingly and intentionally participated in the conspiracy. United States v. Aviles, 274 F.2d 179, 189 (2d Cir.), cert. denied, 362 U.S. 974, 982, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960); United States v. Carminati, 247 F.2d 640 (2d Cir.), cert. denied, 355 U. S. 883, 78 S.Ct. 150, 2 L.Ed.2d 113 (1957).

█ Gutierrez also complains that the prosecutor indicated to the jury, in his summation, that they should not be swayed by sympathy. There is nothing improper or prejudicial in this. One of the standard jury charges in a criminal case contains such an admonition, *see* 1 Devitt & Blackmar, Federal Jury Prac-

tice and Instructions § 10.17 (1970), as did the charge in this case. Such a reference in the prosecution's summation was especially apt here in light of Gutierrez' manifest pregnancy, and defense counsel's reference, in his summation, to that fact, and to the father's abandonment of her.

█ There is no merit in Gomez' contention that the District Judge erred in admitting against him hearsay statements made by co-conspirator Umberto Ramirez prior to the time Gomez was proven, by non-hearsay evidence, to have joined the conspiracy. Not only was Gomez a member of the conspiracy virtually from its inception, but an otherwise admissible declaration of one co-conspirator is admissible against members of the group who joined after the statement was made. United States v. United States Gypsum Co., 333 U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746 (1948); United States v. Cerrito, 413 F.2d 1270 (7th Cir. 1969), cert. denied, 396 U.S. 1004, 90 S.Ct. 554, 24 L.Ed.2d 495 (1970).

█ Count Two of the indictment charged that the defendants "did distribute *and* possess with intent to distribute" 507.55 grams of cocaine hydrochloride (emphasis supplied). The trial court charged, in accordance with the statute, 21 U.S.C. § 841(a)(1), that *either* distribution *or* possession with intent to distribute could be the basis for a conviction. There is no merit in Gomez' claim that this charge was improper. United States v. Carter, 454 F.2d 525 (9th Cir. 1972); Arellanes v. United States, 302 F.2d 603, 609 (9th Cir.), cert. denied, 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962). See United States v. Conti, 361 F.2d 153, 158 (2d Cir. 1966), vacated on other grounds, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968); United States v. Cioffi, slip op. 4845, 4854 (2d Cir. July 16, 1973).

█ Nor is there any merit in Gomez' claims that there were variances between the indictment and proof, or a failure of proof, in that (a) the conspir-

acy proven was not of as long duration as that charged in Count One, although it fell within the period charged, United States v. Postma, 242 F.2d 488, 496–497 (2d Cir.) (on petition for rehearing), cert. denied, 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957); (b) Gomez' role was limited to about 125 grams, not the half kilogram which all the defendants were jointly charged with possessing, *see* United States v. Wanton, 380 F.2d 792, 795 (2d Cir. 1967); Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697, cert. denied, 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588 (1944); (c) the indictment charged violations relating to both Schedule I and Schedule II drugs, whereas the proof pertained solely to cocaine, a Schedule II drug.

The judgments of conviction of all three appellants on Counts One and Two are affirmed. Wilson Ramirez' conviction on Count Three is reversed, with a direction that judgment of acquittal be entered as to that count.