**UNITED STATES of America,**
**Appellee,**

v.

**Frank MASULLO et al., Defendants-**
**Appellants.**

**Nos. 200, 224, 300, Dockets 73–1733,**
**73–1772, 73–1907.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 10, 1973.

Decided Nov. 26, 1973.

---

Michael B. Mukasey, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, John D. Gordan III and John W. Nields, Jr., Asst. U. S. Attys., of counsel), for appellee.

Abraham Glasser, New York City (Jacob P. Lefkowitz, New York City, on the brief), for defendant-appellant Masullo.

Gilbert Epstein, Theodore Krieger, New York City, for defendant-appellant Edelman.

Before FRIENDLY, ANDERSON and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal by Frank Masullo, Ambrose Pare and Michael Edelman from judgments of conviction which were entered on May 7, 1973 in the United States District Court for the Southern District of New York. Appellants were all convicted of conspiracy to distribute and to possess with intent to distribute a Schedule II controlled substance (methamphetamine hydrochloride —popularly known as "speed") in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(B) and 846, after a jury trial before Hon. Arnold Bauman, United States District Court Judge, which commenced on April 3, 1973 and ended on April 10, 1973. The jury did not reach a verdict on a substantive count of distribution of speed as to which Judge Bauman declared a mistrial. On May 7th Masullo was sentenced to a five-year prison term and a special parole period of two years, and Pare was sentenced to a prison term of two years. Sentence was suspended on Pare who was placed on probation for three years. Judgments affirmed.

In view of the character of the arguments raised on appeal, no elaborate discussion of the facts is necessary. The evidence of the Government established that an undercover agent, Nicholas Alleva, with the assistance of an informant, Joseph Swiatek, conducted negotiations with Pare for the purchase of pure amphetamine. After the usual furtive negotiations and meetings which characterize this business, the sale of about a half pound of amphetamine for $4500 was made on August 17, 1972 in Pare's apartment at 41 West 35th Street in New York City. All three of the defendants were present in addition to Alleva and Swiatek. Also present, but not named as a defendant was fellow conspirator Charles Velasquez. The supplier was Masullo who was observed to take $4000 of the payment which was in marked bills. Pare's share was $500. Masullo had been the subject of a two-year investigation by the Bureau of Narcotics and Dangerous Drugs (BNDD) as a ma-

jor supplier of speed. Edelman was a henchman of Masullo, who on the afternoon of the sale told Swiatek that he had been sent ahead by Masullo to count the money before the package was delivered. Swiatek vehemently insisted that the deal had to be made directly with Masullo and not with his underling.

Agents who were surveilling Masullo observed him arriving with Edelman at a hotel near Pare's apartment carrying a brown paper bag. Edelman was then observed entering 41 West 35th Street carrying the same brown paper bag. Masullo soon followed and the sale was then consummated as described. Masullo and Pare were arrested on August 29, 1972. Masullo still had in his possession $1700 in the marked currency employed in the sale. Neither Masullo nor Edelman presented any defense.

### I

On appeal Edelman urges that there was insufficient evidence upon which to base his conspiracy conviction. Looking at the evidence in the light most favorable to the Government as we must (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Tutino, 269 F.2d 488, 490 (2d Cir. 1959)), there is no doubt that Edelman, although not a figure of major importance, was nonetheless an active participant in the conspiracy charged in the indictment. The uncontradicted evidence established that Edelman was a trusted lieutenant of the major figure of the conspiracy, Masullo. He was sent out to make sure that everything was in readiness for the transaction including the payoff; he was observed carrying the inevitable brown pa-

per bag which the jury could reasonably infer contained the speed which was eventually sold to the agents. He was not only present at the sale, but extolled the quality of the merchandise. There was clearly sufficient evidence to support the jury's determination that Edelman was part and parcel of the criminal enterprise and not an innocent bystander. See United States v. Martinez, 479 F.2d 824, 829 (1st Cir. 1973); United States v. Garguilo, 310 F.2d 249, 253–254 (2d Cir. 1962).

Appellant's argument that there could be no conviction of Edelman without proof that he was in actual or constructive possession of the amphetamine is not sound. Edelman was indicted for conspiracy to violate 21 U.S.C. § 841(a) which involves not only possession but also, in the alternative, the distribution or dispensing of the contraband. The court made this point clear in its instructions to the jury. Even if the charge had been limited to conspiracy to possess there would have been no need of showing actual or constructive possession.[1] See United States v. Rappy, 157 F.2d 964, 966–967 (2d Cir. 1946), cert. denied, 329 U.S. 806, 67 S. Ct. 501, 91 L.Ed. 688 (1947).

### II

The appellant Pare makes the argument that it was reversible error for the court to refuse to give the so-called "procuring agent charge," to wit:

> If you find that the defendant, Pare, was asked by a federal agent or his special employee to buy drugs for him, and the defendant, Pare, then purchased from a third person with

---

1. Possession was often a crucial element in drug trafficking cases prior to the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Pub.L.No.91–513, 84 Stat. 1236). Before its repeal by the 1970 Act, 21 U.S.C. § 174 (1964) made it unlawful to import narcotic drugs into the United States or to buy, sell, transport or conceal them knowing that they have been illegally imported. In the absence of direct proof that a defendant, even though he was a conspira-

tor, knew that the drugs were imported, it was necessary for the Government to rely upon the statutory presumption which provided that proof of his possession was deemed sufficient to authorize conviction. See United States v. Steward, 451 F.2d 1203, 1205–1207 (2d Cir. 1971). The present Act has repealed and replaced the old, and there is no necessity to establish knowledge of importation and therefore no independent need to establish possession.

whom he was not associated in selling, then you must acquit Pare of the charges against him.

The procuring agent charge had validity where a defendant was charged with *selling* narcotics (United States v. Winfield, 341 F.2d 70 (2d Cir. 1965)), and there was evidence that he in fact was acting on behalf of a buyer rather than the seller. The legal theory is that as an agent for the buyer he is a principal in or is conspiring in the purchase rather than the sale of the contraband. United States v. Sawyer, 210 F.2d 169, 170 (3d Cir. 1954). See also Lewis v. United States, 119 U.S.App.D.C. 145, 337 F.2d 541, 543–544 (1964), cert. denied, 381 U.S. 920, 85 S.Ct. 1542, 14 L. Ed.2d 440 (1965).

It has no present application where the charge is not sale but rather distribution or possession with intent to distribute. The statute (21 U.S.C. §§ 802(10) & 802(11)) defines "dispense" and "distribute" to mean "deliver" and the term "deliver" is defined to mean "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship" (21 U.S.C. § 802(8)). Under any view of the evidence, Pare was unquestionably actively seeking a transfer of the controlled substance and therefore the requested charge was properly refused. Other circuits have recently reached the same conclusion in cases which are directly in point. United States v. Miller, 483 F.2d 61, 62 (5th Cir. 1973); United States v. Johnson, 481 F.2d 645, 646–647 (5th Cir. 1973); United States v. Hernandez, 480 F.2d 1044, 1046 (9th Cir. 1973); United States v. Workopich, 479 F.2d 1142, 1147 (5th Cir. 1973); see United States v. Jackson, 482 F.2d 1264, 1267 (8th Cir. 1973).

### III

The appellant Masullo argues that his conviction should be reversed because of the admission of testimony of BNDD agents to the effect that after his arrest Masullo admitted that he had delivered and sold about a half pound of speed to one Nick Alonzo (the undercover name of Alleva) on August 17th. He further objects to the testimony of a former Assistant United States Attorney that Masullo admitted at an interview not only the August 17th deal but conceded that he lived on the money he made selling speed. The admissions made were of course damaging and supported the direct testimony of Swiatek and Alleva as to the August 17th transaction. Masullo argues that the admission of his statements violated his Fifth and Sixth Amendment rights as well as the Canons of Professional Ethics.

■ With respect to his Fifth Amendment rights, we see no merit whatever in appellant's claims. Masullo was given *Miranda* warnings at the time of his arrest, at the time he was interrogated by BNDD agents in their office after his arrest, and finally at the interview before the Assistant United States Attorney where he admitted that his prior statements were given "freely and voluntarily." This question was the subject of a suppression hearing prior to trial at which Masullo did not testify or offer any evidence. A reading of the transcript of the hearing makes it clear beyond doubt that Masullo's admissions constituted a waiver of his right to remain silent. See United States v. Ramirez, 482 F.2d 807, 815 (2d Cir. 1973). There are no claims made of unnecessary, prolonged or harassing custodial interrogation. See United States v. Marrero, 450 F.2d 373 (2d Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808 (1972).

■ Appellant's Sixth Amendment argument rests on the failure of the agents to notify Masullo's attorney that he had been arrested and was presently in custody. On the morning of the day of his federal arrest, Masullo, who had previously been arrested by the New York City Police for another drug violation, appeared in a New York State proceeding at the New York Criminal Court Building, 100 Centre Street, New York City. Upon his departure he was ob-

served taking a taxi to 299 Broadway, where he proceeded to the offices of Rubin, Gold and Geller, who had represented him in the past and in the existing New York State criminal action. Masullo was arrested across the street immediately after he left the building. He was taken to the BNDD office in Manhattan. Appellant's theory is that since the BNDD agents knew or should have known that Masullo had "regular" counsel, their failure to notify such counsel of his arrest constituted a violation of his Sixth Amendment rights which in turn mandated the exclusion of his inculpatory statements. The argument of course overlooks the Supreme Court's holding in Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L. Ed.2d 411 (1972):

> In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in Powell v. Alabama, 287 U.S. 45 [, 53 S.Ct. 55, 77 L. Ed. 158] it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See Powell v. Alabama, [supra]; Johnson v. Zerbst, 304 U.S. 458 [, 58 S.Ct. 1019, 82 L.Ed. 1461]; Hamilton v. Alabama, 368 U.S. 52 [, 82 S.Ct. 157, 7 L. Ed.2d 114]; Gideon v. Wainwright, 372 U.S. 335 [, 83 S.Ct. 792, 9 L.Ed.2d 799]; White v. Maryland, 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193]; Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]; United States v. Wade, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149]; Gilbert v. California, 388 U.S. 263 [87

S.Ct. 1951, 18 L.Ed.2d 1178]; Coleman v. Alabama, 399 U.S. 1 [90 S.Ct. 1999, 26 L.Ed.2d 387].

It follows that since no federal judicial proceedings had begun, Masullo had no Sixth Amendment right to counsel at the time he made the admissions which were testified to on trial.[2] United States v. Ramirez, supra, 482 F.2d at 815–816.

Appellant argues however, that the Government knew the defendant had representation in his state case and that therefore there was a constitutional obligation on the part of the agents to advise that counsel of his apprehension. Appellant places primary reliance for this proposition on the case of People v. Vella, 21 N.Y.2d 249, 287 N.Y.S.2d 369, 234 N.E.2d 422 (1967). In Vella the defendant, after having been arraigned and having been assigned counsel in New York County on a charge of receiving stolen property, was arrested by State Police from Suffolk County who were present in the courtroom while he was being arraigned on the receiving charge. He was brought to Suffolk County and there questioned in the absence of his assigned counsel with respect to the theft of the very property he was previously charged with receiving. Whether or not we would follow Vella on its facts, there is a clear distinction between that case and this. There is no showing at all here that Rubin, Gold & Geller who represented Masullo in the state case had been retained to represent him in the federal matter and there was no proof that the crimes were related. Subsequent New York cases have clearly limited Vella to its facts. Thus in People v. Taylor, 27

---

2. Appellant does not cite Kirby v. Illinois, supra, and makes no claim that any adversary judicial proceedings had been initiated against him. In Kirby, the Court stated that the critical point at which the right to counsel attaches is when "the Government has committed itself to prosecute, [for it is] only then that the adverse positions of Government and defendant have solidified." 406 U.S. at 689, 92 S.Ct. at 1882. Here all of Masullo's statements preceded the arraign-

ment before the Magistrate where he was represented by counsel. See also Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L. Ed.2d 387 (1969). Moreover, it is clear that "the fact that the questioning by an Assistant United States Attorney occurred just prior to arraignment . . . [would not] furnish a basis for excluding the statement." United States v. Ramirez, supra, 482 F.2d at 815–816.

N.Y.2d 327, 332, 318 N.Y.S.2d 1, 5, 266 N.E.2d 630, 633 (1971) the court stated:

> [T]he thrust of our prior decisions is that once the police learn that an attorney has entered *the proceeding,* it is offensive to our system of justice, in the absence of a waiver, to permit further questioning by representatives of the People. Implicit in this rationale is the concept that the rule does not obtain unless and until the police or prosecutor learn that an attorney has been secured to assist the accused *in defending against the specific charges for which he is held.* (Emphasis in original).

See also People v. Hetherington, 27 N.Y.2d 242, 245, 317 N.Y.S.2d 1, 2, 265 N.E.2d 530 (1970).

Appellant also relies upon United States v. Thomas, 474 F.2d 110 (10th Cir.), cert. denied, 412 U.S. 932, 93 S.Ct. 2758, 37 L.Ed.2d 160 (1973), which is again distinguishable. There, after a criminal complaint had been filed and after counsel had been assigned and appeared for the defendant at a preliminary hearing the BNDD obtained a written statement from the defendant while he was in jail in the absence of and without the knowledge of the defendant's attorney. The defendant requested the interview, and *Miranda* warnings were given to him before the statement was taken. On trial the statement was admitted in evidence over the objection of defense counsel. On appeal, the court, although condemning the practice of agents conferring with a prisoner, even at his own request, and taking a statement after counsel had been assigned, affirmed the conviction. The court commented that the practice there did not necessarily involve a constitutional issue but rather a violation of the Canons of Ethics,[3] which it would not remedy by a reversal of Thomas' conviction. It is unnecessary for us to decide what sanctions by way of exclusion, if any, a prosecutor's violation of the Canons of Ethics should entail, for here there was none. That Masullo had retained counsel in other past and current drug transactions is not necessarily indicative of his retention of them for the August 17th sale of speed. In fact, his failure to enlist their aid after being given *Miranda* warnings practically on their doorstep is indicative of his intention to confess rather than to contest. He was not a befuddled youth ignorant of where to turn for legal talent.

Aside from the lack of precedent for appellant's position here we find no sound reason at all to extend the exclusionary rule as appellant proposes. The concept that professional criminals have "house counsel" because of prior escapades and that therefore Government agents knowing the identity of prior counsel have an obligation of constitutional or even ethical dimension to contact counsel before questioning them, is hardly appealing. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires that all who are ar-

---

3. Disciplinary Rule 7–104 of the ABA Code of Professional Responsibility (successor to Canon 9 of the ABA Canons of Ethics) provides that a lawyer shall not:

> Communicate or cause another to communicate on the subject of the representation with a party *he knows to be represented by a lawyer in that matter* unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so. (Emphasis added).

A number of courts in addition to the *Thomas* court, have held that prosecutors in criminal proceedings are governed by this standard of conduct. See, e. g., United States v. Springer, 460 F.2d 1344, 1353–1354 (7th Cir.), cert. denied, 409 U.S. 873, 93 S.Ct. 205, 34 L.Ed.2d 125 (1972); United States v. Four Star, 428 F.2d 1406, 1407 (9th Cir.), cert. denied 400 U.S. 947, 91 S.Ct. 255, 27 L.Ed.2d 253 (1970); United States v. Wilson, 398 F.2d 331, 333 (5th Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969); United States v. Wedra, 343 F.Supp. 1183, 1188 (S.D.N.Y. 1972). See generally Drinker, Professional Ethics 202 (1953); Broeder, Wong Sun v. United States: A Study In Faith And Hope, 42 Neb.L.Rev. 483, 599–604 (1963). This question was left undecided by this court in United States v. Massiah, 307 F.2d 62, 66 (1962), rev'd on other grounds, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

rested be advised of their right to obtain counsel and to remain silent. This, in our view, adequately protects their rights. Those who have no "regular" counsel and no means to retain counsel would seem to be more deserving of our solicitude.

## IV

■ Masullo and Pare also urge that the indictment should be dismissed because of the failure of the Government to file a notice of readiness within six months of their arrest, pursuant to Rule 4 of the Rules of the Second Circuit Regarding Prompt Disposition of Criminal Cases.[4] The defendants were arrested on August 29, 1972 and an initial indictment was filed on September 8, 1972, which was followed by a superseding indictment on October 10, 1972. At a pre-trial conference in October before Judge Bauman, he pointed out that the superseding indictment listed amphetamine as a Schedule III instead of Schedule II substance, and indicated the variance would result in the dismissal of the indictment. The Government at that time indicated its readiness for trial. A second superseding indictment was then filed on November 3, 1972 and the Government filed a notice of readiness on March 7, 1973, eight days beyond the six-month period. Since the second superseding indictment of November 3 charged the same crime and was based on the same transaction embodied in the prior indictment except for the technical change in the schedule of the controlled substance from III to II, it is difficult to imagine how the defendants or the district court, who were advised of the Government's readiness to proceed in October, needed further or other notification. Although the Government must communicate its readiness in some fashion, we have held that the rules do not require any formal notification procedure. United States v. Pierro, 478 F.2d 386, 389 (2 Cir. 1973). Here that readiness was made known in October 1972, well within the mandated time frame, and realistically the second superseding indictment could not be reasonably interpreted by defendants as an indication that the status of readiness was then terminated.

## V

■ Other points raised by appellants require little discussion. Masullo argues that in the court's charge to the jury the word "narcotics" was used twice rather than the correct term "stimulant". This was so prejudicial and inflammatory that without more, the judgment of conviction should be reversed, the argument continues. If the use of the term narcotic twice in a thirty-page charge was so prejudicial, it is difficult to understand the failure of any trial counsel to object or ask for corrective instructions. In the two pages of the transcript where the word "narcotic" is used, Judge Bauman on four occasions mentions that the crimes charged involved the distribution of methamphetamine hydrochloride (a formidable enough term *per se*) which he twice characterized as a Schedule II controlled substance. The argument that the additional shorthand description "narcotic" constitutes reversible error, is frivolous.

■ Appellant Pare complains that certain hearsay declarations of Charles Velasquez introduced through the testimony of the witness Swiatek were inadmissible since he was not a member of the conspiracy charged. There was sufficient evidence to establish that Velasquez was a member of the conspiracy and the evidence objected to was only cumulative. Velasquez had advised Swiatek on the morning of August 17th that the package had arrived after Masullo and Edelman had entered the Collingwood Hotel, and he was later present at the sale. Judge Bauman found that

4. These rules have been superseded by prompt disposition plans promulgated by the various district courts within the circuit, and approved by the Judicial Council. Those plans became effective April 1, 1973.

there was sufficient non-hearsay testimony to establish the conspiracy; that the statement was in furtherance of the conspiracy; that the declarations were reasonable, reliable, not crucial to the Government's case and not devastating to the defendant's case, thereby complying with United States v. Puco, 476 F.2d 1099 (2d Cir. 1973).

We have considered all the other arguments raised by appellants and consider them to be without merit.

Affirmed.