**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David TRITTON, Defendant-Appellant.**

**No. 75–1708.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 14, 1976.

Decided March 3, 1976.

Julius Lucius Echeles, Chicago, Ill., for defendant-appellant.

John R. Wilks, U. S. Atty., Fort Wayne, Ind., Carmen Piasecki, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges and PARSONS, District Judge.*

PER CURIAM.

A jury found the defendant-appellant guilty of distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and he appeals. Three issues are presented: (1) whether the defendant was entrapped as a matter of law; (2) whether the defendant's right to present a certain theory of defense was improperly denied; and (3) whether the defendant was unfairly prejudiced when the trial court read the indictment to the jury.

The evidence, taken in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), established the following significant conduct. On September 12, 1974, Emil Tonkovich, a Hammond, Indiana, policeman assigned to work with the Federal Drug Enforcement Administration first met the defendant at the defendant's house. The meeting was arranged by Richard Dingman, an informant who was paid by the Federal Drug Enforcement Administration for time and expenses incurred in seeking out drug violators. At the meeting Tonkovich and the defendant discussed the prices of various amounts of cocaine, the defendant delivered a bag containing cocaine to Tonkovich, and the defendant received $75 from Tonkovich. Prior to this delivery and payment, the defendant had weighed the contents of the bag on a scale and had indicated a gram of cocaine cost $75. The defendant profited $5 from the transaction.

On September 18, 1974, another meeting at the defendant's residence was arranged by Dingman. At that meeting Tonkovich and the defendant discussed purchases of larger quantities of cocaine and Tonkovich told the defendant that $1450 for an ounce of cocaine was too high a price. Also, Tonkovich received a bag containing two grams of a white substance containing cocaine and paid the defendant $150. The defendant realized a profit of $10 from this transaction.

On November 8, 1974, while sitting in his car, Tonkovich received another bag containing cocaine from the defendant. Tonkovich was then informed by the defendant that the defendant would try to arrange for the availability of further supplies of cocaine.

The defendant first met Dingman in January, 1974, and bought drugs from him on about 20 separate occasions up to September, 1974. Prior to the defendant's first meeting with Tonkovich, Dingman told the defendant that he had a friend with a large sum of money and a desire to obtain some cocaine and asked the defendant if he could get any cocaine for this friend.

John A. Meyers, a forensic chemist with the Federal Drug Enforcement Administration, analyzed the substances received by Tonkovich from the defendant and stated they all contained the controlled substance cocaine since they all contained cocaine hydrochloride. He also stated that cocaine is not a narcotic.

■ With respect to the first issue, we conclude from the evidence that entrap-

---

* Chief District Judge James B. Parsons of the Northern District of Illinois is sitting by designation.

ment was not established as a matter of law. Contrary to the defendant's assertion, the factual situation in this case is not "almost identical" to that in *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1968). For example, here there was no "resort to sympathy," no "refusal," no "evasiveness," nor any "hesitancy." *Id.,* at 373, 78 S.Ct. at 821, 2 L.Ed.2d at 851–852. And here, the defendant did make a profit on at least two of the sales. *Id.,* 356 U.S. at 375, 78 S.Ct. at 822, 2 L.Ed.2d at 852–853. Unlike the situation in *Morei v. United States,* 127 F.2d 827, 833–4 (6th Cir. 1942), there were no extravagant inducements by Government agents and there were previous connections with the trafficking in narcotics as well as prior discussions about it. Furthermore, the defendant stated that he obtained the cocaine sold to Tonkovich from a friend in Calumet City, Illinois, who was not identified as a Government agent or informer. *United States v. Rodriguez,* 474 F.2d 587, 589 (5th Cir. 1973). See also *United States v. Brewbaker,* 454 F.2d 1360 (7th Cir. 1972), *United States v. Test,* 486 F.2d 922, 925 (10th Cir. 1973), *limited cert. granted* 417 U.S. 967, 94 S.Ct. 3170, 41 L.Ed.2d 1138 (1974), and *United States v. Jobe,* 487 F.2d 268 (10th Cir. 1973), *cert. den.* 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

■ Regarding the second issue, we conclude that the trial court's refusal to instruct the jury on the statutory definition of cocaine does not compel reversal and remand. Such an instruction, the defendant asserts, would have allowed him to present to the jury the theory that the substances he distributed to Tonkovich did not fall within the relevant statutory definition but rather within the statutory exception. 21 U.S.C. § 812(c), Schedule II(a)(4). Our conclusion rests on our finding that the testimony, particularly the cross-examination, of Mr. Meyers does not contain an evidentiary basis sufficient to mandate jury consideration of this theory of defense. *United States v. Grimes,* 413 F.2d 1376, 1378 (7th Cir. 1969); 21 U.S.C. § 885(a)(1). It is clear from his testimony that Mr. Meyers analyzed the substances in

question with due regard for the relevant statutory provisions; he stated that his duties included the discovery and identification of controlled substances proscribed by statute. Compare *Shurman v. United States,* 219 F.2d 282, 284 and 292 (5th Cir. 1955), *cert. den.* 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253 (1955).

■ As to the third issue, we conclude that the trial court's reading the indictment to the jury does not compel reversal and remand. The term "Narcotic" appearing in the indictment was, at most, mere surplusage. It did not add to the Government's burden of proof. *United States v. Greene,* 497 F.2d 1068, 1086 (7th Cir. 1974), *cert. den.* 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). Our review of the entire record convinces us that the use of the term caused no prejudice to the defendant. *Abramson v. United States,* 326 F.2d 565, 567 (5th Cir. 1964). Nor was its limited use before the jury so prejudicial and inflammatory as to warrant a new trial. *United States v. Masullo,* 489 F.2d 217, 224 (2nd Cir. 1973).

Judgment affirmed.