OPINION OF THE COURT
James G. Starkey, J.
The defendants have been indicted for attempted murder in the second degree, assault in the first degree, attempted robbery in the first degree and related charges. Each has moved to dismiss the indictment pursuant to CPL 30.30 and 30.20 on the grounds that the People were not ready for trial within six months (herein 182 days) of the commencement of the criminal action.
The prosecution urges that much of the delay in this case is excludable pursuant to CPL 30.30 (4) (g) because its witness, Olivia Johnson, having been threatened and assaulted by the defendants, was unavailable to testify. The prosecution also asserts that it was diligent in its efforts to obtain the witness’s testimony. A hearing was held during which four witnesses testified for the prosecution, including Olivia Johnson, Detective John Williams, Assistant District Attorney Alison Hart and Assistant District Attorney Robert Walsh. The motions were denied on June 15, 1993. The findings of fact and conclusions of law follow.
FACTS
On November 1, 1991 the defendants, acting in concert, shot and wounded one Joseph Deveaux. Olivia Johnson was a witness and, on or about November 7, 1991 she informed the police of what she had seen. The defendants were promptly arrested and Olivia Johnson was subpoenaed to appear before a Grand Jury the following day, November 8, 1991. The defendants were arraigned in the Criminal Court on that date, but the witness did not appear to testify before the Grand Jury because of what turned out to be a well-founded fear of the defendants.
Soon thereafter, on November 28, 1991 (Thanksgiving), defendant Ralph and several others accosted Olivia Johnson as she was leaving the apartment building at 427 Dumont Avenue after visiting her mother. The defendant Ralph told her that she should have kept her mouth shut, that she should not have come forward and that she was going to "get *770 killed”. He then forced her upstairs where she was burned, beaten, robbed of some jewelry, then pushed down the stairs.
She reported the attack to Detective John Williams of the Housing Authority Police Department the same day and the defendant Ralph was arrested for the new offenses. In due course, Olivia Johnson was directed — by subpoena or otherwise — to appear on December 12, 1991 as a witness in the Family Court in connection with those charges. On her way to the Family Court that morning, however, she was accosted once more as she neared the building — this time by a man who stated that he was the defendant Ralph’s uncle. The man told her, in essence, that if she knew what was good for her she would, instead of entering the courthouse, turn around and go home. And go home she did.
Thereafter, on December 19, 1991, Assistant District Attorney Alison Hart was assigned to present the case to a Grand Jury and — a short time later — interviewed the complainant. Mr. Deveaux could not identify the culprits and Assistant District Attorney Hart concluded that Olivia Johnson’s testimony would be needed for presentment. On December 23, 1991, she sent a letter to Olivia Johnson requesting her to communicate by telephone and Olivia Johnson complied — but not before Assistant District Attorney Hart had been transferred on January 15, 1992. As a result, she was informed that Assistant District Attorney Hart no longer worked in that unit and she did not make contact.
After Assistant District Attorney Hart was transferred, the case remained unassigned for several weeks, but Olivia Johnson was nevertheless served with a second Grand Jury subpoena on February 14, 1992 and responded on the date designated, March 6, 1992. Assistant District Attorney Robert Walsh was assigned the case and presented her testimony to a Grand Jury on that date. Thereafter, on March 17, 1992, the complainant testified and an indictment was voted the same day. At this point, for reasons not entirely clear, the Assistant District Attorney in charge of the case delayed the filing of the indictment while fruitlessly attempting — with several telephone calls over a two-week period — to ascertain the status in the Family Court of the charges arising out of the Thanksgiving Day attack on Olivia Johnson. The indictment was finally filed on April 21, 1992. On the same date a statement of readiness was successfully served on Legal Aid counsel for the defendant Mitchell and filed with the court. An effort was also made to serve counsel for the defendant Ralph, assigned *771 pursuant to County Law article 18-B, but because of a clerical error, the statement was routed to the Legal Aid Society. That statement of readiness was also filed with the clerk of the court, and though present counsel for the defendant Ralph— also a Legal Aid attorney — could find no record of service, the statement was apparently also served on the Legal Aid Society.[1] As it turned out such service on the Legal Aid Society was premature by six days. As of April 27, 1992, the Legal Aid Society was substituted for the attorney previously assigned to represent the defendant Ralph.
When the indictment was filed, arraignment in the Supreme Court of each defendant was scheduled for May 5, 1992, and did in fact occur on that date as to the defendant Mitchell.
After April 21, 1992, however, the defendant Ralph was again arrested and charged with a new attack on Olivia Johnson — including another robbery — this one said to have occurred on March 31, 1992. Because of that arrest, the defendant was in custody on May 5, 1992 and was not produced for arraignment on that date. The Legal Aid attorney newly assigned to represent the defendant Ralph did not appear either — having not received notification that the arraignment was scheduled.
After arraignment of the defendant Mitchell on May 5, 1992 the case was adjourned to this part — Criminal Term, Part 15 —on May 28, 1992. On that date the defendant Ralph was arraigned, but his Legal Aid attorney did not appear, having submitted an affirmation of engagement on trial elsewhere, coupled with a request that a motion schedule be set as to a new indictment of the defendant Ralph — one based upon the events of March 31, 1992. A motion schedule was then set and the two cases adjourned to June 30, 1992 on which the prosecution again announced ready as to both defendants— this time in open court.
THE LAW
In the first instance, the prosecution urges the exclusion of *772 substantial periods of delay based upon the unavailability of an indispensable witness — Olivia Johnson — because of threats and other misconduct directed at her by, and on behalf of the defendant Ralph. In that regard, it is clear beyond cavil that the defendant Ralph, at least, was guilty of gross, crude and repeated misconduct directed at Olivia Johnson, at least in part for the purpose of intimidating her and tampering with her in her capacity as a witness. It is less clear that the conduct had the desired effect insofar as this case is concerned. It is true that the witness failed to respond to the first Grand Jury subpoena on November 8, 1991 because of fear of the defendants, but it also seems plain that the fear stemmed from the circumstances overall — including her knowledge concerning the ruthless nature of the people who attacked Mr. Deveaux so viciously. There was no evidence of any threat or abusive conduct specifically directed at her by the time she failed to appear on November 8, 1991. More important, that was the first and last time she failed to respond when contacted by the prosecution in connection with this case. Whatever tampering may have occurred — unbeknownst to the prosecution in connection with the Family Court proceeding on December 12, 1991 — Olivia Johnson was responsive to each contact by the prosecution thereafter. When Assistant District Attorney Hart, in the letter dated December 23, 1991, asked her to call she did in fact call — after some delay — and only Ms. Hart’s transfer and what seems to have been a careless handling of that call prevented a fruitful contact. Again, when she was finally subpoenaed a second time to give testimony on March 6, 1992, she responded and did in fact testify. And only then did the prosecution learn for the first time that the witness had been threatened and attacked.
It is true that unavailability of evidence material to the prosecution’s case can constitute exceptional circumstances sufficient to warrant exclusion of delays. (See, CPL 30.30 [4] [g]; People v Zirpola, 57 NY2d 706, 708 [1982].) But it is far from clear that, as to this case, Olivia Johnson was in fact unavailable. Further, in order to qualify for the exclusion of time on that basis, the prosecution must demonstrate due diligence in attempting to procure such evidence. (People v Zirpola, supra.) A time lapse of more than three months from arraignment to the service of the second subpoena — the productive one — marked by only the service of the first subpoena and a letter requesting the witness to call would seem to fall short of that standard. (See, People v Zirpola, supra; People v *773 Washington, 43 NY2d 772 [1977]; People v Meyers, 114 AD2d 861 [2d Dept 1985].) And the absence of due diligence mandates that all of the times from November 8, 1991 to March 6, 1992 (118 days) be charged to the prosecution.
Nor does the prosecution stand in any better position from that date until April 21, 1992, the date the indictment was filed. No barrier worthy of the name existed to more expeditious progress and no cognizable ground has been presented for exclusion of any portion of that 47-day period bringing the total at that time to 165 days as to each defendant.
A different situation came into existence on that date, however, when the prosecution filed — along with the indictment — statements of readiness as to each defendant and also served counsel for the defendant Mitchell. As to the defendant Mitchell, those events indisputably enabled the prosecution to avoid being "not ready for trial within * * * six months of the commencement of a [felony] criminal action” (CPL 30.30 [1] [a]; see also, People v Kendzia, 64 NY2d 331 [1985]).
Moreover, there is authority for the proposition that— even with premature service on Legal Aid counsel — the statement of readiness as to the defendant Ralph filed with the clerk constituted sufficient compliance with the readiness requirement. It is true that the Court of Appeals has stated that for compliance by the filing of a statement of readiness there must be "a written notice of readiness sent by the prosecutor to both defense counsel and the appropriate court clerk, to be placed in the original record (cf. United States v New Buffalo Amusement Corp., 600 F2d 368, 373, n 6)” (People v Kendzia, supra, at 337).[2]
But premature service is different from no service at all. As of April 27, 1993, newly assigned counsel to the defendant Ralph was not in a position significantly different from what would have been the case had he been assigned six days earlier or been served six days later. Certainly no prejudice had resulted — no action had been taken or omitted in reliance on the fact that service had been made prior to assignment of counsel. (Cf., United States v Pierro, 478 F2d 386, 389 [2d Cir 1973].) And if service of the statement which had already been *774 received by counsel were deemed not to have occurred until counsel had been assigned six days later, the six additional days would still only bring the total chargeable to the prosecution to 171, 12 days short of the limit.
More important, the primary authority cited by the Court of Appeals in the Kendzia case (supra) reveals that, while service of a notice of readiness on counsel for the defendant was said to be "the better practice”, it was not required for compliance with the requirement that the prosecution be ready for trial within six months. "Under the decisions of this Circuit, the government bears the burden of informing the trial judge of its state of readiness in pending cases. United States v. Pierro, 478 F.2d 386, 388 (2d Cir. 1973). This rule has been interpreted in some cases as requiring that the government file a notice of readiness for trial, United States v. Rollins, 475 F.2d 1108, 1111 (2d Cir. 1973); United States v. Favoloro, 493 F.2d 623, 624 (2d Cir. 1974); United States v. Salzman, 417 F.Supp. 1139, 1152-53 (E.D.N.Y.), aff’d on other grounds, 548 F.2d 395 (2d Cir. 1976), and in other cases as requiring only that the government announce its readiness orally in open court, United States v. Masullo, 489 F.2d 217, 224 (2d Cir. 1973); United States v. Johnson, 525 F.2d 999, 1007 (2d Cir. 1975). This issue was considered in some detail in United States v. Pierro, 478 F.2d at 388-89, where this court concluded that, consistent with the essential purpose of the notice requirement to inform the court, the government 'must communicate its readiness for trial to the court in some fashion within the six month period * * At the same time, the court emphasized that 'the better practice’ is to file a written notice of readiness with the clerk of the court for the judge’s attention and to serve a copy on the defendant. Id.” (United States v New Buffalo Amusement Corp., 600 F2d 368, 373, n 6 [2d Cir 1979].)
Indeed, in United States v Pierro (478 F2d 386 [2d Cir 1973], supra), cited in that footnote, the same court squarely upheld a statement of readiness as sufficient when a copy had been delivered to the presiding Judge, but neither filed with the clerk nor served on counsel for the defendant. As the court stated there: "The Government also argues that its conduct in this case is consistent with a requirement that it communicate its readiness within the six-month period. We agree. The Second Circuit Rules Regarding Prompt Disposition of Criminal Cases were not intended to straight-jacket the administration of criminal justice in the federal courts, nor were they *775 designed to place obstacles in the path of legitimate law enforcement efforts and thus thwart the compelling public interest in criminal prosecutions. It was never intended that technicalities would carry the day. Some flexibility may be required in individual cases, particularly when the Government demonstrates that its normal practice comports with the letter and spirit of the Rules, that it proceeded in good faith in the case under consideration and that the defendant has suffered no prejudice as a result of his failure to be informed of the Government’s readiness for trial.” (Supra, at 389.)
In this case, as in that one, the action taken by the prosecution would seem to constitute compliance sufficient to come within the spirit and purpose of the rule as of April 21, 1992— 18 days short of the deadline.

. The Assistant District Attorney then in charge of the case testified, in essence, that standard office practice called for service on counsel for the defendant Ralph as designated on the statement of readiness. Further, designated counsel, the Legal Aid Society, was the same counsel as that designated for the codefendant Mitchell who was concededly served and the Legal Aid Society admitted service in writing as to the codefendant Mitchell.

. No issue has been raised here as to a second requirement noted by the Court in that case: that the statement must be of present readiness, not a prediction or expectation of future readiness. Nor, as of April 21, 1992 is there any claim by the prosecution of compliance by an oral declaration of readiness made and recorded in open court. (See, People v Kendzia, supra.)